Reversed and Remanded in Part; Affirmed in Part; Majority and Concurring
and Dissenting Opinions filed November 23, 2005















Affirmed in Part, Reversed and Remanded in Part, and
Majority and Concurring and Dissenting Opinions filed November 23, 2005.

 

 

 

In The

 

Fourteenth Court of Appeals

____________

 

NO. 14-04-00844-CV

____________

 

1001 McKINNEY
LTD.,
Appellant

 

V.

 

CREDIT
SUISSE FIRST BOSTON MORTGAGE CAPITAL, 

CREDIT SUISSE FIRST BOSTON LLC, SITUS, INC., 

SITUS CAPITAL SERVICES, INC., SITUS REALTY SERVICES, INC., 

AND SITUS SERVICING INC., Appellees

 



 

On Appeal from the 165th District Court

Harris County,
Texas

Trial Court Cause No. 01-62097

 



 

M A J O R I T Y   O P I N I O N

Appellant, 1001 McKinney, Ltd.,
filed suit against Credit Suisse First Boston LLC and Situs Services to enforce
an alleged oral loan agreement.  The
trial court granted summary judgment in favor of Credit Suisse First Boston and
the Situs defendants.  We reverse and
remand in part and affirm in part.








I.  Background

In the late 1990's, Larry Levine formed a partnership to
renovate a downtown office building at 1001 McKinney. 
He named the partnership 1001 McKinney,
Ltd. (the partnership).  To fund the
renovation, the partnership sought and obtained a loan in excess of $39 million
from Credit Suisse First Boston (CSFB).[1]  The $39 million represented ninety percent of
the funds needed to renovate the building. 
The remaining ten percent was provided by the individuals who made up
the partnership.

In the process of renovation, the partnership discovered it
needed an additional $7.5 million to complete the project.  The partnership asserts the additional funds
were needed to build extra office and retail space on the lower floors of the
building.  Levine and other
representatives of the partnership met with Tony Poll and Mark Finerman of CSFB
and discussed the partnership=s need for additional funds. 
In his affidavit before the trial court, Levine stated that Poll and
Finerman told him CSFB had Ano problem@ lending additional funds to the partnership.  According to Levine, at a meeting in Las Vegas in November
1999, Poll and Finerman promised that CSFB would fund an additional $6.75
million and that the loan would be documented by January.  In January, 2000, CSFB informed the
partnership it would not lend the additional $6.75 million. 

The partnership subsequently filed suit against CSFB Mortgage
Capital, the entity that funded the original loan; CSFB LLC, its affiliate; and
the Situs companies.  The partnership
alleged causes of action for (1) statutory and common law fraud, (2) civil
conspiracy, (3) negligent misrepresentation, and (4) breach of oral
contract.  In its third amended petition,
the partnership added a plea of promissory estoppel.








CSFB and the Situs defendants filed a motion for summary judgment
in which they asserted that the statute of frauds codified in section 26.02 of
the Texas Business and Commerce Code bars enforcement of the oral agreement as
a matter of law.  In its reply to the
partnership=s response, CSFB added the contention
that the one-year statute of frauds codified in section 26.01(b)(6) of the
Business and Commerce Code also barred enforcement of the oral agreement.  The trial judge denied the motion for summary
judgment.  

Before trial, CSFB filed a motion for reconsideration of its
prior motion for summary judgment.  In
that motion, CSFB renewed its argument that sections 26.01 and 26.02 of the
Texas Business and Commerce Code barred enforcement of the agreement.  The trial court granted summary judgment in
favor of CSFB and Situs as follows:

Defendant=s Motion
for Summary Judgment is GRANTED as to Defendant Credit Suisse First Boston
Mortgage Capital because Texas Bus. & Com. Code ' 26.02, and '
26.01(b)(6) bars [sic] Plaintiff=s
action.

 

Defendants= Motion
for Summary Judgment is GRANTED as to Defendant Credit Suisse First Boston LLC
because there is no evidence that any actions were taken by an agent or
representative of, at the direction of, or on the behalf of Credit Suisse First
Boston LLC.

 

Defendants= Motion
for Summary Judgment is GRANTED as to Defendants Situs, Inc., Situs Capital
Services, Inc., Situs Realty Services, Inc., and Situs Servicing Inc.

 

Appellant does not appeal the judgment in favor of the Situs defendants.

II. 
Standard of Review 








Under the traditional standard for summary judgment, the
movant has the burden to show there is no genuine issue of material fact and
that judgment should be granted as a matter of law. Tex. R. Civ. P. 166a(c); KPMG Peat Marwick v. Harrison County Hous. Fin. Corp., 988 S.W.2d
746, 748 (Tex.
1999).  In reviewing a grant of summary
judgment, we take as true all evidence favorable to the nonmovant and make all
reasonable inferences in the nonmovant=s favor.  Nixon v. Mr. Property Mgmt. Co., 690
S.W.2d 546, 549 (Tex.
1985). A defendant, as movant, is entitled to summary judgment if it (1)
disproves at least one element of the plaintiff's theory of recovery or (2)
pleads and conclusively establishes each essential element of an affirmative
defense, thereby rebutting the plaintiff=s cause of action.  Am. Tobacco Co. v. Grinnell, 951
S.W.2d 420, 425 (Tex.
1997). 

A no‑evidence motion for summary judgment is proper
when there is a complete absence of evidence of one or more essential elements
of a claim or defense on which an adverse party has the burden of proof at
trial.  Tex.
R. Civ. P. 166a(i); Johnson v. Brewer & Pritchard, P.C., 73
S.W.3d 193, 207 (Tex.
2002). 

III. 
Summary Judgment Grounds

In its first sub-issue, appellant contends the trial court
erred in granting summary judgment on a ground that was not expressly presented
in the motion for summary judgment. 
Appellant contends appellees did not raise the issue of the one-year
statute of frauds found in section 26.01(b)(6) in their motion for summary
judgment.  Appellees raised the issue of
the one-year state of frauds in their reply to the appellant=s response to motion for summary
judgment and in the motion for reconsideration. 


Rule 166a requires the motion for summary judgment to state
the specific grounds therefor, and the moving party is entitled to judgment as
a matter of law on the issues expressly set out in the motion or in an answer
or any other response.  Tex. R. Civ. P. 166a(c).  A motion for summary judgment must itself
expressly present the grounds upon which it is made.  McConnell v. Southside
Ind. Sch. Dist., 858 S.W.2d 337, 341 (Tex. 1993).  In the absence of the nonmovant=s consent, a movant may not raise a
new ground for summary judgment in a reply to the nonmovant=s response.  Sanders v. Capitol Area Council, 930
S.W.2d 905, 911 (Tex. App.CAustin 1996, no writ). 








Appellees contend appellant had actual notice of the ground
twenty-one days in advance of submission of the motion for
reconsideration.  Notice, however, is not
the only purpose behind the supreme court=s strict interpretation of Rule
166a(c).  The standard set forth in McConnell
does not require a showing that the nonmovant was given appropriate notice or
that the opposing party was misled concerning the grounds for summary
judgment.  Coastal Cement Sand Inc. v.
First Interstate Credit Alliance, Inc., 956 S.W.2d 562, 566 (Tex. App.CHouston [14th Dist.] 1997, pet.
denied).  The standard is simply whether
the grounds are explicitly stated in the motion itself.  Id.  Accordingly, the judgment of the trial court
is incorrect in that it recites section 26.01(b)(6) as a bar to appellant=s action.  Because appellees did not raise section
26.01(b)(6) as a bar in their motion for summary judgment, we will address only
the trial court=s ruling that section 26.02 bars appellant=s action.[2]    

IV. 
Statute of Frauds

Appellant contends that the trial court erred in granting
summary judgment on the ground that the statute of frauds prevents enforcement
of the alleged loan agreement.  The trial
court found that sections 26.02 and 26.01(b)(6) of the Texas Business and
Commerce Code bar appellant=s claim against CSFB Mortgage Capital.             Section 26.02(b) states: AA loan agreement in which the amount
involved in the loan agreement exceeds $50,000 in value is not enforceable
unless the agreement is in writing and signed by the party to be bound or by
that party=s authorized representative.@ 
Tex. Bus. & Com. Code Ann.
' 26.02(b).  Loan agreement is defined as:

one or more promises, promissory
notes, agreements, undertakings, security agreements, deeds of trust or other
documents, or commitments, or any combination of those actions or documents,
pursuant to which a financial institution loans or delays repayment of or
agrees to loan or delay repayment of money, goods, or another thing of value or
to otherwise extend credit or make a financial accommodation.








 Tex. Bus.
& Com. Code Ann. ' 26.02(a)(2).  Because the alleged oral promise of Poll and
Finerman to lend $6.75 million constitutes a loan agreement that exceeds
$50,000, the trial court found the agreement unenforceable.  

Appellant contends that section 26.02 does not apply to this
transaction because A[t]he CSFB Defendants are not >financial institutions=@ as defined in the statute.  Financial institution is defined as:

a state or federally chartered bank,
savings bank, savings and loan association, or credit union, a holding company,
subsidiary, or affiliate of such an institution, or a lender approved by the
United States Secretary of Housing and Urban Development for participation in a
mortgage insurance program under the National Housing Act (12 U.S.C. Section
1701 et seq.).   

Tex. Bus. & Com. Code Ann. ' 26.02(a)(1).  Appellant contends that appellees failed to
prove that they are chartered by a United States federal or state
banking authority or approved by the Department of Housing and Urban
Development (HUD) for participation in a mortgage insurance program under the
National Housing Act. 








In their reply to appellant=s response, appellees attached the
affidavit of Thomas M. Zingalli, the director in the Controller=s Division of CSFB LLC.  In his affidavit, Zingalli stated that the
Controller=s Division maintains the books and
records of CSFB, including information regarding licenses and government
approvals held by CSFB and its related companies.  Zingalli stated that he had been an employee
of CSFB since 1985 and that during his tenure as director in the Controller=s Division he became familiar with
the licenses and government approvals held by CSFB.  Zingalli stated that during the time period
from at least June 1998 through June 19, 2001, CSFB Mortgage Capital LLC was
approved by the United States Department of Housing and Urban Development as a
lender in the HUD/FHA Title I program and as a mortgagee in the HUD/FHA Title
II program.  Zingalli further listed the
HUD Mortgagee numbers for CSFB.  Attached
to Zingalli=s affidavit was a letter from the
director of the Lender Approval and Recertification Division of the Department
of Housing and Urban Development in which the director certified that CSFB
Mortgage Capital LLC was a HUD/FHA approved mortgagee or lender as of August
16, 1984, and that approval remained in effect as of the date of the letter,
which was June 19, 2001.

Appellant argues that (1) appellee=s summary judgment proof shows no
approval by the secretary of HUD, (2) Zingalli=s affidavit is conclusory, and (3)
the letter from HUD is hearsay.  On
motion for summary judgment, appellant did not raise the issue of approval by
the secretary of HUD.

A.  Zingalli Affidavit

Appellant contends that appellees= summary judgment proof was
insufficient to show that CSFB is a financial institution because Zingalli=s affidavit is conclusory.  Rule 166a(f) requires that Asupporting and opposing affidavits
shall be made on personal knowledge, shall set forth such facts as would be
admissible in evidence, and shall show affirmatively that the affiant is
competent to testify to the matters stated therein.@ 
Tex. R. Civ. P. 166a(f).  Conclusory statements in an affidavit
unsupported by facts are insufficient to support or defeat summary
judgment.  Wadewitz v. Montgomery, 951 S.W.2d 464, 466 (Tex. 1997). 
A conclusory statement is one that does not provide the underlying facts
to support the conclusion.  Rizkallah
v. Conner, 952 S.W.2d 580, 587 (Tex. App.CHouston [1st Dist.] 1997, no writ). 

Zingalli=s affidavit is sufficiently supported
by underlying facts to show that CSFB is a financial institution within the
meaning of section 26.02.  Zingalli
established that he had personal knowledge that CSFB Mortgage Capital was
approved by HUD as a lender in the mortgage insurance program under Titles I
and II of the National Housing Act. 
Zingalli=s personal knowledge resulted from his employment as director
of the Controller=s Division of CSFB, which keeps records of all licenses and
government approvals held by CSFB. 
Zingalli listed HUD mortgagee license numbers for CSFB.  Zingalli also attached the letter from HUD as
further support of his knowledge. 
Zingalli=s affidavit was sufficient to establish that CSFB Mortgage
Capital is a financial institution.  It
is not conclusory; rather, it contains logical conclusions based on underlying
facts. 








B. 
HUD Letter

Appellant challenges the letter from
HUD as improper summary judgment proof because it is hearsay.  Appellees respond that the letter is
admissible under the public records exception to the hearsay rule.  The public records exception to the hearsay
rule provides, among other things: ARecords, reports, statements or data
compilations, in any form, of public offices or agencies setting forth (A) the
activities of the office or agency ....@ are not excluded by the hearsay
rule.  Tex.
R. Evid. 803(8).  Rule 803 (8)
does not require a formal predicate to be laid through a witness, but the
offered document must be shown to satisfy the requirements of the rule.  State v. Foltin, 930 S.W.2d 270, 272B73 (Tex. App.CHouston [14th Dist.] 1996, writ
denied). 

The HUD letter is admissible as an
exception to the hearsay rule because it meets the threshold requirements of
Rule 803(8).  First, the record reflects
the letter from HUD is a report Asetting forth the activities of the
office or agency.@  Second, the
circumstances do not indicate a lack of trustworthiness.  Rule 803(8) creates a presumption of
admissibility, with the burden being placed on the party opposing the admission
of the report to show its untrustworthiness. 
Beavers v. Northrup Worldwide Aircraft Services Inc., 821 S.W.2d
669, 675 (Tex. App.CAmarillo 1991, writ denied). 
The trial judge=s ruling on the tender of such a report is reviewed under an
abuse of discretion standard.  Id.  








Appellant contends that the letter
lacks trustworthiness because it appears to have been created for purposes of
litigation.  We disagree with this
characterization.  The letter is dated
June 19, 2001, almost six months before the filing of appellant=s suit in December 2001.  Further, the question of whether appellees
were financial institutions within the meaning of the statute of frauds was not
raised until appellant=s response to the motion for summary judgment filed September
15, 2003.  The record does not support
the contention that the letter was created for the purpose of this
litigation.  Therefore, the trial court
did not abuse its discretion in admitting the HUD letter under the public
records exception to the hearsay rule.  The uncontroverted evidence establishes that
the Department of Housing and Urban Development approved CSFB Mortgage Capital
for participation in programs under the National Housing Act. 

C. The Alleged Loan Agreement

Appellant alleges that Poll and
Finerman were employees of CSFB LLC at the time they made the oral promise to
lend $6.75 million.  Appellant argues
that because appellees presented evidence that CSFB Mortgage Capital is a
financial institution, but not CSFB LLC, the statute of frauds does not apply
to CSFB LLC.  

Levine stated in his affidavit that
Poll and Finerman agreed to lend the additional funds with terms similar, if
not identical, to the original loan agreement. 
It is undisputed that the original loan was funded by CSFB Mortgage
Capital.  There is no evidence that any
representative of appellant thought the loan would be funded by CSFB LLC.   Because the alleged agreement was oral, the
statute of frauds prohibits proof of the agreement.  See Tex.
Bus. & Com. Code Ann. ' 26.02(b).  Therefore, summary judgment on the breach
of oral contract cause of action is appropriate as to all defendants.

V.  Tort causes of action

In addition to breach of the oral
contract, appellant alleged statutory fraud, negligent misrepresentation, and
conspiracy causes of action.  Appellant
contends even if the statute of frauds prohibits enforcement of the alleged
oral agreement, it can maintain the tort causes of action.








To determine whether the tort actions
can be maintained, we look to the substance of the cause of action rather than
the manner in which it was pleaded.  Jim
Walter Homes, Inc. v. Reed, 711 S.W.2d 617, 617B18 (Tex.1986).  Tort obligations are those imposed by law
when a person breaches a duty that is independent from promises made between
the parties to a contract; contractual obligations are those that result from
an agreement between parties, which is breached.  Southwestern Bell Tel. Co. v. DeLanney,
809 S.W.2d 493, 494 (Tex.
1991).  If the defendant=s conduct would give rise to
liability only because it breaches the parties= agreement, the plaintiff=s claim ordinarily sounds only in
contract.  Id. 
If the defendant=s conduct would give rise to liability independent of the fact
that an agreement exists between the parties, the plaintiff=s claim may also sound in tort.  Id.

Each tort claim alleged in appellant=s petition arises from the alleged
oral agreement.  When the injury is only
the economic loss to the subject of the contract itself, the action sounds in
contract alone.  Reed, 711 S.W.2d
at 617B18. 
Where, as here, a plaintiff is seeking to recover what he would have
gained had the promise been performed, the gist of his cause of action is the
breach of the promise.  Haase v.
Glazner, 62 S.W.3d 795, 799 (Tex.
2001).  Because appellant=s tort
causes of action for statutory fraud, negligent misrepresentation, and
conspiracy arise from the alleged oral agreement, summary judgment on those
claims is proper.

VI. Promissory
Estoppel

Appellant contends that appellees are
estopped from claiming the statute of frauds as a defense to their breach of
contract claim because Poll and Finerman promised to prepare and sign written
agreements to document the new loan.  For
promissory estoppel to create an exception to the statute of frauds, there must
have been a promise to sign a written agreement that had been prepared and that
would satisfy the requirements of the statute of frauds.  Nagle v. Nagle, 633 S.W.2d 796,
800 (Tex.
1982).  It is the promise to sign a
written agreement or enter into a written agreement that is determinative.  Southmark Corp. v. Life Investors, Inc.,
851 F.2d 763, 769 (5th Cir. 1988). 
Promissory estoppel sufficient to remove a contract from the statute of
frauds requires that the promisor agree to sign a document that had already
been prepared or Awhose wording had been agreed upon@ that would satisfy the statute of
frauds.  Id. at 766.  A mere promise to prepare a written contract
is not sufficient.  Beta Drilling,
Inc. v. Durkee, 821 S.W.2d 739, 741 (Tex. App.CHouston [14th Dist.] 1992, writ
denied).








Here, Levine testified that Poll and
Finerman promised to make the additional loan under the same terms as the
original loan.  Poll and Finerman promised
to prepare and sign written agreements to document the new loan.  No documents were prepared.  Further, Levine testified in his deposition
that the parties never agreed on the wording of the loan document.  Appellant presented no evidence that a written
agreement had been prepared or that the parties had agreed on the wording of
the agreement.  Therefore, appellant
failed to raise the essential elements of its claim of estoppel.

VII.  Common Law Fraud

Appellant also asserted a cause of action
for common law fraud.  Appellant contends
its fraud claim may not contravene the statute of frauds to the extent it seeks
out-of-pocket damages incurred in reliance on appellees= alleged misrepresentations.  See Haase, 62 S.W.3d at 799.  In its petition, appellant alleges it
continued to renovate the building and enter into lease agreements in reliance
that appellees would lend the additional $6.75 million.  The summary judgment record reveals the
partnership relied on the alleged promise to lend additional funds and
continued construction of the entire available office and retail space in the
building.  Reliance damages, such as
money spent on additional construction, are not part of the benefit of the
alleged bargain between the parties.  See
Haase, 62 S.W.3d at 800. (holding that despite the fact that the statute of
frauds prevents enforcement of the agreement, a plaintiff can recover
out-of-pocket damages incurred in reliance on the alleged false
representation).  Therefore, appellant
raised a fact issue with regard to recovery of out-of-pocket damages incurred
in reliance on the alleged misrepresentation.

To prevail on its fraud claim,
appellant must show that it actually and justifiably relied on the
representation and thereby suffered injury. 
Ernst & Young, L.L.P. v. Pac.
Mut. Life Ins. Co., 51 S.W.3d 573, 577 (Tex. 2001). 
Appellees contend that even if appellant can show reliance damages, it
cannot show that it justifiably relied on the alleged promises made by Poll and
Finerman.  Appellees argue that Levine
and his partners were sophisticated developers and knew that any oral loan
agreement would not be enforceable. 
Appellant, on the other hand, presented summary judgment proof that it
had a business relationship with appellees and was justified in relying on the
alleged promise to fund the additional loan.








In the context of common law fraud,
courts have uniformly treated the issue of justifiable reliance as a question
for the factfinder.  Coston v. Bank of
Malvern, 991 F.2d 257, 260 (5th Cir. 1993); Hall v. Harris County Water
Control & Improvement Dist. No. 50, 683 S.W.2d 863, 868  (Tex. App.CHouston [14th Dist.] 1984, no writ)
(whether plaintiff reasonably relied on promise is generally a question of
fact).  In this case, appellant presented
evidence that it relied on appellees= promise by leasing office space and
entering into agreements with tenants for improvements that could not otherwise
be made without the additional funding. 
Appellees, on the other hand, presented evidence that appellant is a
sophisticated developer and was not justified in relying on an oral promise to
lend money.  The question of justifiable
reliance depends heavily on the relationship between the parties and their
relative sophistication.  

Viewing the facts most favorably to
appellant, we believe that a genuine issue of material fact exists as to
whether appellant reasonably relied to its detriment on appellees= promises.  Any justifiable reliance the jury may find on
retrial stems from the verbal representation made in Las Vegas in November, 1999.  Therefore, on remand, out-of-pocket damages
are limited to those expenses incurred between the date of the alleged oral
agreement in November 1999 and the date in January 2000 when appellees informed
appellant they would not fund the loan. 
Therefore, to the extent appellant seeks out-of-pocket damages that
occurred after the alleged oral agreement to lend additional money, in reliance
on the alleged oral promise, summary judgment is not proper.

VIII. 
Conclusion








Under the facts of this case, to the
extent that appellant seeks to recover the benefit of the bargain damages
related to an alleged oral agreement that is unenforceable under the statute of
frauds, the statute bars appellant=s tort and contract causes of
action.  Appellant=s common law fraud claim for
out-of-pocket damages incurred in reliance on the alleged promise survives
the statute of frauds.  Accordingly, we
reverse the trial court=s
judgment insofar as it finds the statute of frauds precludes appellant=s fraud
claim for out-of-pocket damages and remand to the trial court for proceedings
consistent with this opinion.  We affirm
the summary judgment with regard to appellant=s
remaining causes of action.

 

 

/s/        Adele Hedges

Chief Justice

 

Judgment rendered and
Majority and Concurring and Dissenting Opinions filed November 23, 2005.

 

Panel consists of Chief
Justice Hedges, Justice Frost, and Senior Chief Justice Murphy.[3]  (Frost, J., concurring and dissenting.)

 

 

 

 











[1]  Credit Suisse
First Boston Mortgage Capital funded the loan.





[2]  Appellees
contend appellant waived any error in the judgment by failing to advise the
trial court that it had granted summary judgment on grounds that were not
presented in the motion.  For this proposition,
appellees cite GXG, Inc. v. Equitable Bank, 1997 WL 51210 (Tex. App.CDallas 1997, no writ), in which the court of appeals
held that a trial court=s granting of more relief than requested in the motion
for summary judgment is not fundamental error and is waived unless raised in
the trial court.  Appellees have not
cited, nor have we been able to find, any other court that has followed the
reasoning in GXG.  The supreme
court found in McConnell that a non-movant is not required to except to
a movant=s failure to assert specified grounds in the motion
for summary judgment.  858 S.W.2d at
342.  We therefore decline to require
such an exception.





[3]  Senior Chief Justice Paul C. Murphy
sitting by assignment.